IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: ) | | |
| ) | | |
| STEVEN LOUIS SCHULLO, ) | Case No. 18-04551-TOM-13 | |
| ) | | |
| Debtor. ) | | |

| | | |
|---|---|---|
| STEVEN LOUIS SCHULLO, ) | | |
| ) | | |
| Plaintiff, ) | A.P. No. 23-00043-TOM | |
| vs. ) | | |
| ) | | |
| APEX ROOFING & RESTORATION, ) | | |
| INC. ) | | |
| ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION AND ORDER

****** NOT INTENDED FOR PUBLICATION ******

This adversary proceeding came before the Court for a hearing on January 31, 2024, on the Motion for Default Judgment filed by the Debtor seeking a default judgment, as well as damages, attorneys fees, and costs, against Apex Roofing & Restoration, Inc ("Apex"). Appearing before the Court were Paula Greenway, counsel for the Debtor; Brad Caraway, Chapter 13 Trustee; and Steven Louis Schullo, Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order of Reference Dated July 16, 1984, as Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

in 28 U.S.C. § 157(b)(2)(A).[2] The Court has considered the pleadings, the arguments, the testimony, and the law, and finds and concludes as follows.[3]

## FINDINGS OF FACT[4]

The Debtor filed his Chapter 13 bankruptcy case on November 8, 2018, listing Apex as a secured creditor owed $6,084.78.[5] The Debtor's Amended Plan (BK Doc. 40), filed on January 31, 2019, proposed to pay his creditors, including Apex, 100% of their allowed claims. Specifically, the debt owed to Apex was to be paid as secured with an interest rate of 12%. The Confirmation Order (BK Doc. 51) confirming the Debtor's Amended Plan was entered on March 8, 2019. On November 7, 2023, the Trustee filed the Trustee's Certification of Plan Completion (BK Doc. 70) and on November 20, 2023 the Court entered an Order of Discharge (BK Doc. 78).

This adversary proceeding against Apex was filed on November 6, 2023 (AP Doc. 1) and was served on Apex on November 7, 2023 (AP Doc. 6). Apex failed to respond to the Summons and Complaint and thus counsel for the Debtor filed an Application for Entry of Default by Clerk on December 19, 2023 (AP Doc. 8). The Clerk's Entry of Default was entered on December 20, 2023 (AP Doc. 9), and the same day, the Debtor filed a Motion for Default Judgment (AP Doc. 10) against Apex. On January 31, 2024, this Court held a hearing on the Motion for Default Judgment to allow the Debtor to provide evidence as to damages.

---

[2] 28 U.S.C. §157(b)(2)(A) provides as follows:
    (b)(2) Core proceedings include, but are not limited to–
    (A) matters concerning the administration of the estate[.]
[3] This Memorandum Opinion and Order constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.
[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).
[5] On February 1, 2019, Apex filed a proof of claim in the original amount of $12,882.52. On February 20, 2019, the Debtor objected to the claim as being more than the amount due as of the petition filing date (BK Doc. 45) and subsequently, on March 18, 2019, Apex amended the claim to $6,072.62. The Debtor withdrew his objection.

The Debtor testified that he hired Apex to replace his roof in late 2016 after a hail storm. The estimate from Apex, dated December 15, 2016 and attached to Apex's proof of claim (Claim 11), reflects that the total cost of the repair would be $12,822.62. The payment terms on the estimate are not very clear. It appears that three separate payments to Apex were contemplated: the first in the amount of $9,423.27, without a specific due date; the second in the amount of $1,000.00 "to be paid 1/20/17"; and the third is completely illegible. Claim 11-1 Part 2 at 1. Also attached to the claim are documents from State Farm[6] regarding insurance coverage for the damage. It appears that the coverage included a "Net Actual Cash Value Payment" in the amount of $9,423.27 with a "Maximum Additional Amount Available If Incurred" of $2,399.35 for a total of $11,822.62. Claim 11-1 Part 2 at 5. The insurance documents reflect that a payment of $9,423.27 to the Debtor was included with the documents. There is nothing attached to Claim 11 indicating that the Debtor received a payment of $2,399.35, but the Debtor testified that he received around $11,800 from the insurance company.

As already noted, it is not clear exactly what terms the Debtor and Apex originally agreed to regarding payment. The Debtor testified that at this time he was going through financial hardships as his company was downsizing and his hourly rate was reduced. He explained that the insurance money, which was sitting in an account, was used to pay medical bills. According to the Debtor he explained what he described as a financial hardship to the owner of Apex and they reached a verbal agreement for the Debtor to pay half at that time and the other half in six months. It is unknown to the Court exactly when this took place as the Debtor did not specify when he and Apex made the verbal agreement.

---

[6] There is no date at the beginning of the set of insurance documents, but a footer on every page reflects "Date: 11/16/2016 10:07 AM."

The Debtor testified that he had contacted the owner of Apex (again, the time frame is unknown) several times to come pick up a check for a payment and, although the owner said he would go by the Debtor's home, he never did. Eventually, according to his testimony, the Debtor sent more than half the amount due to Apex by certified mail, but the envelope was mailed back to the Debtor unopened. The Debtor introduced into evidence as Exhibit 1 the unopened certified mail envelope postmarked May 5, 2017, and the opened envelope from Apex addressed to the Debtor and postmarked May 10, 2017.

The Debtor's counsel questioned him as to what happened after he received the unopened certified mail envelope. The Debtor responded that he and his wife began to panic, "and to compound things, it was I think that very next day we received notice that they were putting a [mechanic's] lien on our house." AP Doc. 20, PDF with attached audio file from the January 31, 2024 hearing. The Debtor testified that he believed the lien was filed in March 2018.[7] The Debtor's testimony on this point is inconsistent with the envelopes introduced as Exhibit 1 reflecting postmarks of March 2017.

In addition to the lien, the Debtor testified that Apex took action to collect the debt by garnishing an account he owned at America's First Federal Credit Union ("America's First") in an amount of more than $300.00. He introduced into evidence a Process of Garnishment issued by the Circuit Court of Shelby County, Alabama on October 2, 2018, along with America's First's Garnishee Answer, dated October 11, 2018, indicating it held $317.00 belonging to the Debtor. Ex. 2. Although it was never explained by the Debtor, it appears that Apex was able to file the mechanic's lien and garnish his bank account due to a state court default judgment Apex obtained

---

[7] The Debtor originally stated that the mechanic's lien was done in March 2019 but after being reminded of his bankruptcy filing date in November 2018 he stated he had mixed up the year, as the lien was in 2018.

4

against the Debtor on March 9, 2018, in the amount of $5,721.82 plus costs of $362.96. *See* BK Doc. 45, Debtor's Objection to Claim.

The Debtor filed his bankruptcy case on November 8, 2018. The Debtor testified that after his bankruptcy case was filed Apex continued attempting to collect the debt by calling him six to ten times, although he did not answer. In addition, Apex sent three post-petition letters to the Debtor.[8] After the Debtor received the first letter, dated September 9, 2023 (Ex. 3), Debtor's counsel sent a cease-and-desist letter to Apex (Ex 4). Despite this, Apex sent two more collection letters dated October 11, 2023 (Ex. 5), and November 7, 2023 (Ex. 6). Attached to the collection letters Apex sent invoices detailing payments made on the account post-petition. The Court asked the Debtor about the first payment of $6,750.00, made March 8, 2019, that was significantly larger than the other payments credited to the account. The Debtor testified that he had made the payment himself from the insurance money.[9] When asked by the Court why he did not make a payment until more than two years after he received the insurance money, he explained that

> "[W]e were trying to arrange for the owner to come by and pick it up, send certified check, all those things transpired, um, and then the, um, their attorney got involved, and it kind of delayed things a little bit. I actually sent, um, those payments to, uh, the attorney, uh, much earlier than that date, although I don't recall when, in the summer of 2019 or earlier."

AP Doc. 20, PDF with attached audio file from the January 31, 2024 hearing. The Debtor's testimony that he sent the payment in the summer of 2019 or earlier is inconsistent with the invoices attached to the October 2023 and November 2023 letters[10] reflecting the $6,750.00 payment posted on March 8, 2019.

---

[8] The three letters were sent near the end of the case.
[9] This payment was made post-petition without notice to the Court or the Trustee. If the Debtor made this payment using the insurance money, which was paid to the Debtor pre-petition, the Debtor did not disclose on his schedules that he was holding these funds; thus, it is unclear whether the Debtor had retained the funds, or spent it all then replaced it.
[10] Invoices were attached to all three letters that Apex sent to the Debtor, but it appears that a page was missing from the invoice sent with the September 2023 letter.

Apex was successful in another of its collection attempts around October 5, 2023, when it garnished the Debtor's "pocket change" and "Christmas fund" accounts at America's First, this time receiving $194.00. To his knowledge, neither he nor the Chapter 13 Trustee have received any of that money back. In addition, the Debtor, who testified that he is a cybersecurity specialist earning $79.50 per hour, claims that he lost at least three or four days of work as a result of dealing with aspects of the situation.[11] As to the mechanic's lien on his house, after he received his discharge, he attempted to contact the attorney who had filed the lien but his attempts remained unanswered. The Debtor testified that he checked on the date of this hearing and found the lien remained in place.[12]

The Debtor described the effects he experienced from Apex's collection efforts that continued after his bankruptcy filing. When he received the September 2023 letter demanding payment, he said he panicked because at that point he thought the debt was satisfied[13] and was expecting to receive a discharge;[14] however, it seemed the debt was coming back to haunt him. He also said he experienced sleep and anxiety problems and frequently argued with his wife about financial issues. The Debtor also testified that he and his wife had wanted to sell their house during in the bankruptcy, hoping to pay off the case and get a fresh start earlier; however, he claims that at least three prospective buyers withdrew offers after discovering the lien. He testified that he had

---

[11] Also, the Debtor explained that the bankruptcy filing itself has had a negative effect on the Debtor's job, causing him to lose his security clearance which he testified he has still has not been able to get back.

[12] The fact that the debtor knew how to check for a lien on his property prior to the start of the hearing demonstrates the sophistication of the Debtor. As a sophisticated debtor, he either knew or should have known the consequences of failing to properly use the insurance funds to pay the Apex debt.

[13] The Chapter 13 Trustee's Interim Statement dated January 23, 2024 indicates that Apex was paid the entire approved amount of its amended claim, $6,072.62, along with $2,202.06 interest. Per the Statement, the claim (Claim 11) has a zero balance.

[14] The Chapter 13 Trustee filed a Certificate of Plan Completion on November 7, 2023, and the Debtor received his discharge on November 20, 2023.

6

Case 23-00043-TOM    Doc 22    Filed 03/04/24    Entered 03/04/24 15:01:47    Desc Main
Document    Page 6 of 13

high hopes for receiving a fresh start with the bankruptcy case but now wonders how long it will take to get away from the situation with Apex.[15]

The Debtor testified that around the time he received the insurance proceeds he was suffering a financial hardship; for example, his hourly rate at work had been cut and his family had medical bills to pay. The Court finds it important to note that this Debtor is not the typical Chapter 13 debtor as he had significantly more income than the debtors usually appearing before this Court. The Debtor's gross income for 2016 (BK Doc. 8), the year he received the insurance payment, was in excess of $155,000. In 2017 (BK Doc. 9), the year he sent the certified mail to Apex, the Debtor's income was in excess of $151,500. Thus, it appears that at the relevant time the Debtor still had a substantial income, and his hardship, as far as income goes, was that his yearly gross income had decreased by less than $4,000.[16]

The Debtor informed the Court that he is seeking compensatory damages in the amount of $50.00 for each phone call and $500.00 for each letter that he received, as well as $194.00 to replace the money taken from his America's First Federal Credit Union accounts post-petition. The Debtor also seeks at least $10,000 punitive damages to keep Apex from taking the same actions against others in the future. Finally, the Debtor seeks an award of attorneys fees. The Debtor's counsel submitted an invoice in the amount of $4,404.24 for approximately 12.5 hours that she has spent on this adversary proceeding. Ex. 7.

## CONCLUSIONS OF LAW

A. Default Judgment Standard

---

[15] On February 29, 2024, this Court held a hearing on the Debtor's Motion for Entry of an Order Declaring Liens Satisfied (BK Doc. 80) and ruled that the Apex debt is due to be deemed as paid in full and satisfied, and the lien is deemed released (BK Doc. 85).

[16] In addition to his substantial income, at the time of his bankruptcy filing in 2018, the Debtor owned a home valued around $354,000 with a monthly payment of $1,664 and a 2017 Volvo XC60 with a monthly payment of $753.

Before the Court may enter a default judgment the Debtor must comply with the provisions of Federal Rule of Civil Procedure 55, made applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7055. Rule 55 requires that a plaintiff must first seek an entry of default from the clerk, showing by an affidavit or otherwise that the defendant has failed to answer or defend against the plaintiff's complaint. Fed. R. Civ. P. 55(a). Counsel for the Debtor requested entry of default and the Clerk entered a default on December 20, 2023.

Rule 55 provides that, after an entry of default by the Clerk, the plaintiff may then request a default judgment for either an amount certain or for an amount to be determined by the Court. Fed. R. Civ. P. 55(b).[17] In this case, the Debtor requested in his Motion for Default Judgment that the Court conduct a hearing to determine an award of damages, attorneys fees, and costs.

A motion for default due to a defendant's failure to plead is not in and of itself conclusive of the defendant's liability. *See DirecTV, Inc. v. Craig*, 361 F. Supp. 2d 1339, 1341 (M.D. Ala. 2005) (citing *DirecTV. Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004)); *DirecTV v. Trawick*, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005). Rather, "[e]ntry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

B. <u>Violations of the Automatic Stay</u>

To provide for orderly liquidation or reorganization the Bankruptcy Code stays, among other things, the commencement or continuation of an action against the debtor that could have been brought before the bankruptcy filing, or collection of a claim that arose before the bankruptcy

---

[17] According to Rule 55, a plaintiff may request that the Clerk enter a default judgment if the amount sought "is for a sum certain or a sum that can be made certain by computation" and the defendant is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). Otherwise, a request for default judgment must be made to the court. Fed. R. Civ. P. 55(b)(2).

8

Case 23-00043-TOM    Doc 22    Filed 03/04/24    Entered 03/04/24 15:01:47    Desc Main
Document    Page 8 of 13

filing; an act to obtain possession of estate property; or an act to create or enforce a lien against estate property. 11 U.S.C. § 362(a). This automatic stay arises by operation of law at the moment the bankruptcy petition is filed regardless of whether affected parties have notice of the filing. 11 U.S.C. § 362(a). *See e.g., Ford v. Loftin (In re Ford)*, 296 B.R. 537, 542 (Bankr. N.D. Ga. 2003).

Should a creditor violate the automatic stay, § 362(k)(1) of the Bankruptcy Code provides "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). The Eleventh Circuit has articulated a two-part test for determining whether a creditor willfully violated the automatic stay. *See Jove Eng'g, Inc. v. I.R.S. (In re Jove)*, 92 F.3d 1539, 1555 (11th Cir. 1996). The test is whether the creditor "(1) knew that the automatic stay was invoked and (2) intended the actions which violated the stay." *Id*. at 1555-56. There is no specific intent requirement for a violation of the automatic stay to be willful. *Caffey v. Russell (In re Caffey)*, 384 B.R. 297, 307 (Bankr. S.D. Ala. 2008). Rather, for purposes of §362(k)(1), a creditor acts willfully when he acts deliberately with knowledge of a bankruptcy petition even if his actions are not intentionally meant to violate the stay. *Id.*; *See also In re Parker*, 279 B.R. 596, 603 (Bankr. S.D. Ala. 2002). Violation of the automatic stay is presumed deliberate if the creditor has actual notice of the bankruptcy. *Spinner v. Cash In A Hurry, LLC (In re Spinner)*, 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008). Upon obtaining knowledge of the bankruptcy, the creditor bears the burden of not violating the automatic stay. *Caffey*, 384 B.R. at 307.

In this case, there is no question that Apex had notice of the Debtor's bankruptcy case, as the debt owed to it was included in the Debtor's bankruptcy schedules. Further, Apex filed a Proof of Claim, which it later amended after the Debtor objected, for that debt. There is also no question that Apex intended the actions complained of by the Debtor. Despite knowing of the Debtor's

9

Case 23-00043-TOM    Doc 22    Filed 03/04/24    Entered 03/04/24 15:01:47    Desc Main
Document      Page 9 of 13

bankruptcy case, Apex willfully called the Debtor between six and ten times, sent a collection letter on September 9, 2023, then sent two more collection letters on October 11, 2023 and November 7, 2023 after receiving a cease-and-desist letter from Debtor's counsel. Further, Apex post-petition garnished a bank account belonging to the Debtor. Based upon the foregoing, the Court finds that Apex's continued efforts to collect on a pre-petition debt without any regard for the automatic stay amount to willful violations of 11 U.S.C. § 362(a).

### C. Damages

Because Apex willfully violated the automatic stay the Debtor is entitled to damages; however, the Debtor's testimony, the exhibits, and the documents in the Court's file lead this Court to conclude that the amount of damages should be limited. While the Court recognizes that this Debtor's experience in bankruptcy was not ideal as a result of Apex's conduct, because the Debtor did not properly hold and use the insurance proceeds, the Court feels compelled to find that the Debtor should suffer some consequences for his failure to properly use the insurance funds.

The Debtor testified that he believed it was the day after receiving the unopened certified mail envelope back from Apex that he learned of the mechanic's lien filed on his house. The certified mail envelope and the return envelope were postmarked May 2017. The Debtor later testified that he believed the lien was filed in March 2018. As to the $6,750.00 payment, the Debtor testified that he had sent the payment to Apex's attorney earlier than March 8, 2019 but also testified that it was perhaps in summer of 2019. The bankruptcy case was filed in November 2018. If the Debtor did make the payment to Apex in 2019, he failed to provide an explanation of why he himself made a large payment post-petition to a creditor who was being paid through the Trustee. Perhaps the Debtor had become confused about the date he sent payment to Apex's counsel. The fact that Apex received a state court default judgment against the Debtor in the

10

Case 23-00043-TOM    Doc 22    Filed 03/04/24    Entered 03/04/24 15:01:47    Desc Main
Document    Page 10 of 13

amount of $5,721.82 plus costs of $362.96 pre-petition, on March 9, 2018, seems to indicate that Apex had received some payment prior to 2019 since the original amount owed to Apex was $12,822.62 per the estimate.[18]

In addition, the Debtor testified that his bankruptcy was filed in part because of the situation with Apex; however, the situation somewhat resulted from his own actions. The evidence shows that the Debtor received over $9,400 from State Farm in December of 2016.[19] Instead of putting the money away until it was time to pay Apex, the Debtor used the funds on personal expenses including medical bills. Further, as noted, the Debtor is not the typical Chapter 13 debtor. He has a substantial income and significant assets. He testified he works in cybersecurity, which suggests the Debtor has sophisticated job responsibilities. Given the foregoing, the Court finds this Debtor should have known there might be consequences for failing to timely pay for the roof repairs with the insurance money. In fact, it appears that had the Debtor done so, he would not have been subject to garnishments, liens, and other collection efforts from Apex. Perhaps the Debtor would not have needed to file for bankruptcy at all.

Although this Court has identified inconsistencies in the testimony and evidence and has recognized that the Debtor's problems with Apex appear to be partially a result of his own actions, Apex still undisputedly violated the automatic stay and is thus responsible for damages.

**Actual Damages**

The Debtor is entitled to actual damages, including attorneys fees, pursuant to 11 U.S.C. §§ 362(k)(1) and 105(a) due to the violations of the automatic stay and the resulting emotional

---

[18] If the Debtor did indeed pay Apex directly post-petition, despite the Debtor's confirmed plan providing for payments to Apex from the Trustee, then the Debtor might have another problem. While the Court does not intend to sua sponte address such issue in this case at this time, the Court does find this a good opportunity to remind debtors and counsel that it could be prudent for debtors to consult counsel before taking any action inconsistent with a Chapter 13 plan.

[19] There is no evidence before the Court as to when the Debtor received the remainder of the approximately $11,800 insurance proceeds.

Case 23-00043-TOM    Doc 22    Filed 03/04/24    Entered 03/04/24 15:01:47    Desc Main
Document      Page 11 of 13

distress suffered by Debtor. *See In re Caffey*, 384 B.R. at 309 ("emotional damages qualify as 'actual damages'"). The Court finds that Debtor suffered actual damages in the amount of $194.00 that was garnished from his credit union account and $50.00 for the distress and worry caused by Apex's continued collection efforts, comprised of $25.00 for the post-petition phone calls and $25.00 for the three collection letters sent to the Debtor. Further, the Debtor is entitled to additional actual damages in the amount of $150.00 for lost wages.[20] The Court further awards costs and attorneys fees in the amount of $4,000.00

## Punitive Damages

Bankruptcy Code § 362(k)(1) grants this Court discretion to award punitive damages in "appropriate circumstances." 11 U.S.C. § 362(k)(1). Determining what constitutes "appropriate circumstances" is left to the Court's discretion. *See Smith v. Homes Today, Inc.,(In re Smith)*, 296 B.R. 46, 56 (Bankr. M.D. Ala. 2003). Similarly, Bankruptcy Code § 105(a) enables this Court to enter an order awarding punitive damages, so long as the order is "'necessary or appropriate' to carry out the provisions of the Bankruptcy Code." *See Hardy v. U.S.*, 97 F.3d at 1389-90 (citing *Jove*, 92 F.3d at 1553-54).

Apex has been on notice of the Debtor's bankruptcy since shortly after the filing of the case yet failed to respect the automatic stay. The automatic stay provision is at the heart of the Bankruptcy Code's protective parameters for debtors, and such blatant disregard for the law as displayed by Apex will not be condoned by this Court. Therefore, based upon the foregoing, the Court finds the Debtor is entitled to punitive damages in the amount of $2,500.00 Accordingly, it is hereby

---

[20] These amounts awarded by the Court are lower than those requested by the Debtor, as the Court finds the reduction appropriate due to the debtor's misuse of the insurance funds.

**ORDERED, ADJUDGED AND DECREED** that Debtor's Application for Default Judgment is **GRANTED** and damages shall be and hereby are awarded against Apex in favor of the Debtor, Stephen Louis Schullo, in the amount of $394.00 for actual damages, $4,000.00 for attorneys fees, and $2,500.00 for punitive damages. A separate judgment shall be entered.

Dated: March 4, 2024  /s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

13

Case 23-00043-TOM    Doc 22    Filed 03/04/24    Entered 03/04/24 15:01:47    Desc Main
Document    Page 13 of 13